UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN KITCHEN DELIGHTS, INC., | ) |
| Plaintiff, | ) ) ) |
| | ) No. 22-cv-3549 |
| v. | ) |
| | ) Judge April M. Perry |
| CITY OF HARVEY, an Illinois municipal Corporation, and CHRISTOPHER J. CLARK, Individually and as mayor of the City of Harvey, | ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

American Kitchen Delights, Inc. ("Plaintiff") brings this action against the City of Harvey, Illinois ("City") and its mayor Christopher J. Clark ("Mayor Clark") (collectively, "Defendants"). Plaintiff's Second Amended Complaint asserts multiple constitutional claims and a request for declaratory judgment.[1] Doc. 65. Before the Court are cross-motions for summary judgment. Doc. 128; Doc. 136. For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendants' motion in part.

## BACKGROUND

Plaintiff is a private label food manufacturer with a facility located at 15320 Cooper in Harvey, Illinois. Doc. 150 ¶ 9. Shahnawaz Hasan ("Hasan") serves as Plaintiff's owner and

---

[1] Plaintiff's Second Amended Complaint includes the following claims: Count I (Fifth Amendment Taking); Count II (State Law Taking); Count III (Equal Protection); Count IV (Fourth Amendment); Count V (Procedural Due Process); Count VI (Substantive Due Process); and Count VII (Declaration of Rights and Injunction). Doc. 65 ¶¶ 60-143. For Count II, which the Court already dismissed with prejudice, Doc. 12, Plaintiff includes the notation in the amended complaint that it was "previously stricken and re-pleaded here solely to preserve the issue on appeal." Doc. 65 at 9.

president. *Id.* ¶ 10. The City is a municipal corporation with Mayor Clark serving as its elected mayor. *Id.* ¶¶ 4-5.

Plaintiff's facility is bordered by Dixie Highway to the west, 154th Street to the south, Hoyne Avenue to the east, and an access road to the north. *Id.* ¶ 11. Cooper runs north-south through Plaintiff's property. *Id.* ¶ 12. Fences surround Plaintiff's facility with two gates on Cooper and a gate on Hoyne. *Id.* ¶ 24. Thus, to access Plaintiff's facility, one must do so from Hoyne or from Cooper via either 154th Street or the access road.

The City owns the two parcels of land to the north of Plaintiff's facility: to the northwest is the Harvey Police Department ("HPD Parcel") and to the northeast is a vacant parcel that once housed the Dixie Square Mall ("Vacant Parcel"). *Id.* ¶¶ 13-14. The access road to the north of Plaintiff's property is completely within surveyed boundaries of the HPD Parcel and the Vacant Parcel. *Id.* ¶¶ 15-17; Doc. 138-12 at 9. This access road provides police and other official vehicles with access to the HPD's south parking lot, which is supposed to be used by official vehicles only. Doc. 150 ¶ 18.

Plaintiff's claims involve two actions taken by Defendants that allegedly restricted access to Plaintiff's facility. First, at some point, a five-ton weight limit sign was placed on 154th Street, which Plaintiff alleges prevented delivery trucks from accessing its facility via 154th Street. *Id.* ¶¶ 34-35; Doc. 128 at 27. The parties dispute when the weight-limit sign was erected; Plaintiff claims that it was erected on May 27, 2020, and Defendants contend that it had been there for many years. Doc. 150 at 13-14; 150-1 at 5.

Second, it is undisputed that on May 27, 2020, Defendants placed three sets of concrete blocks on the access road, thus blocking Plaintiff's delivery trucks from accessing Plaintiff's facility via the access road. Doc. 150 ¶ 21. The City claims that these barriers were placed due to

concerns about police and emergency vehicles having unobstructed access to the HPD parking lot, particularly during emergencies. *Id.* ¶¶ 20, 26-27. The concrete blocks were removed from the access road on May 29, 2020. *Id.* ¶ 41.

## LEGAL STANDARD

Summary judgment is proper when the movant shows that there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Although the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, the party that bears the burden of proof must present facts showing there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *LaRiviere v. Bd. of Trs.*, 926 F.3d 356, 359 (7th Cir. 2019). To avoid summary judgment, the nonmovant must show more than metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). While the court must construe the facts in the light most favorable to the nonmovant and draw all reasonable inferences in its favor, this obligation does not extend to drawing inferences that are supported only by speculation or conjecture. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013). The Court is mindful of its obligation to draw reasonable inferences in the correct direction as it simultaneously considers cross-motions for summary judgment. *See, e.g., Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).

## ANALYSIS

Both Plaintiff and Defendants argue that summary judgment is justified in their favor on all counts. Doc. 128; Doc. 136. The Court addresses each motion in turn.

Beginning with Plaintiff's motion for summary judgment, the Court notes that Plaintiff's briefing does not comply with Local Rules 7.1 or 56.1. First, Plaintiff at no point received leave to exceed the Court's fifteen-page limit when it filed its thirty-two-page motion for summary judgment, as Local Rule 7.1 requires. Doc. 128. Moreover, eight pages of Plaintiff's brief are nothing more than extraneous, irrelevant, and unsupported accusations about individuals and events that form no basis for this cause of action. Doc. 128 at 1-8. Second, and far more troubling, is Plaintiff's wholesale disregard of Local Rule 56.1. Doc. 128; Doc. 150; Doc. 151.

Under Local Rule 56.1, the movant must supply the Court with "a statement of material facts" in the form of numbered paragraphs asserting what it considers to be undisputed facts. L.R. 56.1(a); FED. R. CIV. P. 56(c)(1). Each asserted fact "must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." L.R. 56.1(d)(2). The evidentiary material supporting each fact must then be attached to the statement of material facts. L.R. 56.1(a)(2); L.R. 56.1(d)(3). Furthermore, the memorandum of law in support of the motion for summary judgment "must cite directly to specific paragraphs" of the statement of facts. L.R. 56.1(g). Failure to comply with this rule "may be grounds for denial of the motion." L.R. 56.1(a)(3).

Local Rule 56.1 is not a mere formality; it is necessary "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh

Circuit has evocatively noted, "Judges are not like pigs, hunting for truffles buried in briefs." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Therefore, the district court has the discretion to demand strict compliance with Rule 56.1. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.").

Here, Plaintiff's motion for summary judgment does not comply with Local Rule 56.1 in two material respects. First, Plaintiff's motion does not contain a single citation to Plaintiff's statement of material facts. *See* Doc. 128. Second, although Plaintiff did file a statement of facts, it did not file any supporting exhibits as evidence. Doc. 128-1. Despite the fact that Defendants pointed out these deficiencies, Doc. 135, Doc. 137 at 3, Plaintiff has done nothing to correct the problem. Since all of Plaintiff's purported facts are unsupported by any evidence, they will be disregarded. L.R. 56.1(d)(2)-(d)(3). Summary judgment is the "put up or shut up" stage of litigation, and Plaintiff has not put up any evidence in support of its motion for summary judgment. *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024). Accordingly, Plaintiff's motion for summary judgment is denied.

The Court next addresses Defendants' cross-motion for summary judgment. In contrast to Plaintiff's motion, Defendants' briefing is procedurally compliant. Doc. 136; Doc. 138. But, again, the Local Rules get Plaintiff into trouble. A party opposing summary judgment must respond to the moving party's statement of facts citing "specific evidentiary material that controverts the fact," L.R. 56.1(e)(3), and attach evidentiary material that had not previously been included in the record. L.R. 56.1(b)(2). Failure to follow these rules may cause the facts to

5

be deemed admitted. L.R. 56.1(e)(3). Plaintiff's response to Defendants' statement of facts, however, are mostly unsupported narratives without citations to evidentiary material. Doc. 150. Accordingly, the Court finds the following material facts to be deemed admitted:

- The City owns the HPD Parcel, the Vacant Parcel, and the access road which runs through both properties. Doc. 150 ¶¶ 15.[2]
- The City placed the concrete blocks on the access road to restrict public access, prevent public vehicles from interfering with police vehicles exiting and entering the HPD, and to take possession of its property. *Id.* ¶ 26.
- The City did not place concrete blocks blocking Plaintiff's entrance on Hoyne, and the south gate to Plaintiff's facility remained open. *Id.* ¶¶ 23, 25.[3]

As explained below, with these facts considered admitted, Defendants have demonstrated that they are entitled to a partial grant of summary judgment.

**A. Equal Protection Claim**

The Court first addresses Plaintiff's Equal Protection claim, which is brought under a "class of one" theory. Specifically, Plaintiff claims that its right to equal protection of the laws was violated when Defendants barricaded Plaintiff's business and took Plaintiff's private property under force on May 27, 2020. Doc. 65 ¶¶ 23, 29, 81.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. In order to prevail on a class of one Equal Protection claim, Plaintiff must prove that Defendants, "without rational reason, treated it differently from other similarly situated entities." *RJB Props., Inc. v. Bd. of Educ. of City of Chicago*, 468 F.3d 1005, 1009 (7th Cir.

---

[2] Plaintiff provides a single citation to dispute this alleged fact, which does nothing to establish who does or does not own the property. Doc. 150 at 4-6.
[3] Plaintiff cites "Ellis Dep. 20-21" to dispute this fact. Doc. 150 at 9-10. The cited deposition testimony is that the witness did not believe trucks could use Hoyne "due to the weight limit." Doc. 138-11 at 8. The witness did not know what the weight limit was on Hoyne, nor did the witness testify about how much trucks generally weigh, or how much Plaintiff's delivery trucks weighed. Therefore, this deposition cite does not disprove that Plaintiff's facility was still accessible via Hoyne.

2006). "The classic class-of-one claim is illustrated when a public official, with no conceivable basis for his action other than spite or some other improper motive ... comes down hard on a hapless private citizen." *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013). Because an "improper motive is usually covert, … courts first look to eliminate all proper motives. If there was no rational basis for the treatment of the plaintiff, then the motives must be irrational and improper." *Id.* And "[i]f animus is readily obvious," the plaintiff need not "show disparate treatment in a near exact, one-to-one comparison to another individual." *Id.*

Here, the undisputed facts show that Defendants had a rational basis for blocking the public's access to the HPD's south parking lot, which was used only for official vehicles. Specifically, Defendants have proffered that the City wanted to restrict public access to its property and had safety concerns about public vehicles interfering with police vehicles. Doc. 150 ¶ 26. Plaintiff's response to this explanation is that it was a "post hoc rationalization[] unsupported by contemporaneous evidence." *Id*. But "[u]nder rational basis review, the plaintiff has the burden of proving the government's action irrational, and the government may defend the rationality of its action on any ground it can muster, not just the one articulated at the time of decision." *RJB Props., Inc.*, 468 F.3d at 1010; *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) ("[A]ll it takes to defeat a class-of-one claim is a *conceivable* rational basis for the difference in treatment."). It is clearly rational for a police department to want to prevent public access to a parking lot used only for official vehicles. Plaintiff's arguments that the barriers were really motivated by a desire to retaliate against him is irrelevant to the Equal Protection analysis: if the defendant "can come up with a rational basis for the challenged action, that will be the end of the matter – animus or no." *Monona*, 784 F.3d at 1122. Therefore, summary judgment is appropriate for Defendants on Plaintiff's Equal Protection claim.

7

B. **Fourth Amendment Claim**

The Court next considers Plaintiff's Fourth Amendment claim, in which Plaintiff alleges that an illegal seizure occurred when the City barricaded access to Plaintiff's facility. Doc. 65 ¶ 86.

The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "Any Fourth Amendment inquiry necessarily begins with a determination of whether a … seizure actually occurred." *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010). "One who has no proprietary or possessory interests in … the property seized is not in a position to claim that [their] constitutional rights have been violated by an unreasonable … seizure." *United States v. Eversole*, 209 F.2d 766, 768 (7th Cir. 1954).

In this case, Plaintiff has no ownership interest in the access road. Plaintiff does have an ownership interest in its facility, so the question becomes whether a reasonable jury could conclude that there was a meaningful interference with that interest when the City stopped public vehicle traffic via the access road. The Court finds that, on the record before it, no such finding could be made. Based upon the undisputed facts available to the Court, Plaintiff retained the ability to access its facility via 154th Street and Hoyne. While it is possible that Plaintiff's delivery trucks exceeded the weight limits on Hoyne and 154th Street, Plaintiff has not directed the Court to evidence in the record to establish how much Plaintiff's delivery trucks weighed, and it is not the Court's job to speculate. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir.

2013).[4] Therefore, no reasonable jury could find that Defendants' actions "meaningfully" interfered with Plaintiff's ability to access its property within the meaning of the Fourth Amendment. Summary judgment is granted to Defendants on Plaintiff's Fourth Amendment claim.

### C. Due Process Claims

The Court next considers Plaintiff's claims that its procedural and substantive due process rights were violated when Defendants erected the barricades. Doc. 65 ¶¶ 92, 99.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND XIV. Supreme Court doctrine differentiates between two types of due process claims: deprivations of procedural due process and more limited substantive due process rights. *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Evaluating procedural due process entails a two-part analysis: "first, [a determination] whether the plaintiff was deprived of a protected interest; if so, [a determination of] what process was due under the circumstances." *Hess v. Bd. of Trs. of S. Illinois Univ.*, 839 F.3d 668, 673 (7th Cir. 2016). In contrast, substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Both procedural and substantive due process claims require a plaintiff to identify a protected property interest. *See Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017); *Khan v. Bland*, 630 F.3d

---

[4] Plaintiff argues in its brief that its delivery trucks far exceeded five tons, but there is no citation to the record in support of this fact. Doc. 128 at 27. Additionally, neither party's statement of material facts provides support for this concept.

519, 535 (7th Cir. 2010) ("Intrusion upon a cognizable property interest is a threshold prerequisite to a substantive due process claim.").

The Court begins with the question of whether Plaintiff has a protectable interest in the City's access road. *See Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 509-510 (7th Cir. 2013) ("Although the Fourteenth Amendment protects property rights, it does not create them… Instead, property rights are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."). The Seventh Circuit has made it clear that "property is what is securely and durably [plaintiff's] under … law, as distinct from what [a plaintiff] hold[s] subject to so many conditions as to make [its] interest meager, transitory, or uncertain." *Hussey v. Milwaukee Cnty.*, 740 F.3d 1139, 1142 (7th Cir. 2014); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). It is undisputed that the access road is owned by the City. Moreover, as is discussed above, the City did not deprive Plaintiff of the right to access Plaintiff's own property because two entrances to Plaintiff's facility remained available under the facts that have been properly presented to the Court.[5]

In response, Plaintiff argues that while it may not have owned the access road, it did have a protected interest in the access road because that road became a public highway pursuant to Section 2-202 of the Illinois Highway Code through adverse public use. *See* 605 ILCS 5/2-202;

---

[5] Plaintiff has cited no cases that support the proposition that a property owner has a due process right to access its property via a specific preferred route. Rather, Plaintiff's argument rests on the premise that its delivery trucks could not access its facility at all because of the City's actions – a premise that Plaintiff does not support with a single factual citation to the record.

10

*Koch v. Mraz*, 165 N.E. 343 (Ill. 1929); *see also City of Mattoon v. Paradise Twp*, 475 N.E.2d 644, 648 (Ill. App. Ct. 1985) ("In order to establish a public road by prescription, it must be established that the public use was adverse, under claim of right, continuous, and uninterrupted, with the knowledge of the owner but without his consent for the statutory period."). Key to this legal theory is proof that the use of the property is adverse to the rights of the true owner. To satisfy adversity, "the use must have been enjoyed under such circumstances as will indicate that it has been claimed as a right, and has not been regarded by the parties merely as a privilege or license, revocable at the pleasure of the owners of the soil." *Nationwide Fin., LP v. Pobuda*, 21 N.E.3d 381, 394 (Ill. 2014). "Mere permission to use land cannot ripen into a prescriptive right, no matter how long the permissive use is enjoyed." *Id.* Normally, "the question of whether a use is adverse under a claim of right … is a question of fact for the trier of fact." *Id*.

      The Court finds that the Defendants have not met their burden of showing no genuine issues of material fact as to whether the access road became public by operation of law. The Court begins by noting that it has not accepted Defendants' proffered fact that the access road "is not a public road." Doc. 138 ¶ 18. Whether the road has become public by virtue of 605 ILCS 5/2-202 is a legal conclusion, and legal conclusions are not properly included in statements of material facts.[6] Moreover, the evidence that Defendants cite in support of their motion for summary judgment establishes that the City owns the access road, but it does not support the conclusion that the road had not become public. *See, e.g.*, Doc. 138-4 at 10 ("Q. Okay, And when you say private property, you mean public property owned by the City of Harvey? A. Correct."); Doc. 138-4 at 31 ("I thought that we needed to take possession of that road"); Doc. 138-10 at 9 (establishing that the Chief of Police saw public vehicles using the access road and

---

[6] Notably, Defendants objected to Plaintiff's proffered fact that the access road was used "by the public as a highway" on the grounds that this was a legal opinion or conclusion. Doc. 135 at ¶ 9.

11

did not cite them or order any of his officers to cite them); Doc. 138-11 at 6 (establishing that police officer saw truck drivers and citizens using the access road and was not aware of any citations being given to them for doing so). Defendants acknowledge that Plaintiff has owned its facility since 1994, Doc. 135 ¶ 3, and it is a reasonable inference that Plaintiff had been using the access road since that time. Implicit in Defendants' proffered fact that the City needed to "take possession or control" of the access road, Doc. 138 ¶ 27, is the admission that at some point, the City lost possession or control of the access road. In short, genuine disputes of fact exist as to whether the public's use of the access road was adverse, under claim of right, continuous, uninterrupted, and with the knowledge of the City but without consent.

If the access road did become a public road by operation of law, Plaintiff may have had a procedural due process right to notice and a hearing before being denied access to the road. That said, the parties have not briefed this issue: both seem to assume that if the street was private, Plaintiff has no due process rights, and if it was public, Plaintiff had the right to notice and a hearing before being denied access. The Court does not think the issue is that simple. *Compare Warren v. City of Athens, Ohio*, 411 F.3d 697, 708-09 (6th Cir. 2005) (concluding that there is a protectable property interest under Ohio law for a property owner to be able to access their business via an adjoining public highway); *with Wardany v. City of San Jacinto*, 509 Fed. Appx. 650, 651 (9th Cir. 2013) (concluding that there is no protectable property interest under California law for a business owner to access the public street in front of their store "let alone [to have] continuous, unrestricted, and unmodified access"). The key question is what rights a private business has in a public highway under Illinois law. And the Court will not undertake this analysis without adversarial briefing, so for the time being, Plaintiff's procedural due process claim survives summary judgment.

The same cannot be said of Plaintiff's substantive due process claim, even assuming Plaintiff had some protected property interest in the access road. Plaintiff has cited no cases establishing a fundamental right "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty," *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997), for a business to have the use of a public road that adjoins its property. Nor is there any evidence from which one could conclude that Defendants' conduct "shocks the conscience" in the way that substantive due process cases have defined that concept. *See County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) (noting that forced pumping of a suspect's stomach does shock the conscience, but reckless disregard for a suspect's life does not). Defendants are therefore entitled to summary judgment on Plaintiff's substantive due process claim.

### D. Declaration of Rights and Injunction Claim

Plaintiff lastly brings a state law claim requesting a declaration of rights and injunction based upon the supposedly new weight limit sign and the City's authority to put up that sign, as well as a finding that the access road is a public highway. As already noted, there are disputed factual issues on both of these points, and therefore summary judgment is denied. As for Defendants' argument that there is no threat of ongoing injury because the concrete blocks were removed after only two days, the Court notes that the blocks were removed only because a state court issued a temporary injunction ordering that result. Doc. 138-3 at 11. The City does not get bonus points for having followed a court order.

### E. Qualified Immunity

Finally, the Court agrees with Defendants that qualified immunity for Mayor Clark is appropriate as to the Procedural Due Process claim. As is discussed above, even assuming that the access road became a public road by operation of Illinois law, it is an open legal question as

13

to whether an Illinois business has a protectable property interest in accessing their business via a particular public road such that the denial of access to the road constitutes a due process violation. Given that it is Plaintiff's burden to defeat the qualified immunity defense and he has done nothing to meet that burden, *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019), the Court cannot find that Mayor Clark violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).[7]

## CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted as to Plaintiff's Equal Protection claim (Count III), Fourth Amendment claim (Count IV), and Substantive Due Process claim (Count VI). Plaintiff's Procedural Due Process Claim (Count V) survives summary judgment, as does Plaintiff's request for a declaration of rights and injunction (Count VII). Count II was previously dismissed with prejudice and was repleaded by Plaintiff "solely to preserve the issue on appeal." Doc. 65 at 9. Count II is therefore dismissed. Count I was previously dismissed without prejudice, Doc. 12, and was subsequently repleaded in the amended complaint. Doc. 65. Defendants have not moved to dismiss it. Neither party addresses the substance of Count I in their summary judgment pleadings.[8] Therefore, Count I remains a pending claim. Finally, Mayor Clark is entitled to qualified immunity as to Count V, and judgment is entered in his favor on Count V.

---

[7] Plaintiff does not cite a single case in its responsive brief when addressing the question of qualified immunity. Doc. 151 at 15. Instead, Plaintiff repeats his allegations that Mayor Clark was motivated by "political animus" and "vengeance." *Id*. But the Supreme Court has clearly held that the qualified immunity standard is objective, not subjective. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) ("a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to the defense").

[8] When the parties were asked to clarify the status of Count I, Defendants noted that it was dismissed on October 21, 2022. Doc. 154. That is true, but it was dismissed without prejudice, meaning Plaintiff was allowed to try again. Doc. 12. Plaintiff did so, including Count I in two amended complaints. Doc. 53, 65.

Dated: September 2, 2025

                                                         APRIL M. PERRY
                                                         United States District Judge

---

If Defendants believe that the amended complaints is insufficiently pled, they need to file the appropriate motion.